## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| United States of America, | § | |
| | § | |
| vs. | § | |
| | § | |
| Cengiz Jan Comu, | § | NO. 3:19-CR-00112-K |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Cengiz Jan Comu's Motion for Review and Revocation of Magistrate Judge's Order of Detention and Appeal of Magistrate Judge's Order Denying Defendant's Motion for Reconsideration ("Motion") (Doc. 213), filed January 3, 2020. After careful consideration of the Motion, the Government's response (Doc. 224), filed January 17, 2020, the record, and applicable law, the Court **DENIES** Defendant's Motion and **AFFIRMS** Judge Rutherford's Order Denying Defendant's Motion for Reconsideration.

## I.      Factual and Procedural Background

On March 5, 2019, Comu was indicted alongside 5 co-conspirators with conspiracy to commit mail and wire fraud. The indictment stems from an alleged scheme to defraud investors with a high-yield investment scheme, through a company called EarthWater, that targeted elderly victims in particular. Once Comu and defendants received the funds, they allegedly used the victims' money and EarthWater accounts like "a personal piggybank." The government alleges that Comu was the leader

of the fraud in which he recruited salespersons, prepared false and misleading promotional material to help with disseminating EarthWater stock, and controlled the distribution of the proceeds between himself and co-conspirators.

On May 8, 2019, Comu was arrested. On May 12, 2019, while in federal custody, Comu called a 78-year-old alleged victim and asked for a $500,000 loan in the form of a trust. The Government alleges this proposal was intended to conceal the money from the government in order to continue the fraud. On May 13, 2019, at his pretrial hearing, Magistrate Judge Rutherford released Comu on the conditions that Comu was prohibited from i) communicating with witnesses and victims in this case and ii) selling, promoting, or advising on the purchase or sale of securities.

Despite the pretrial conditions, Comu continued his ways. In June 2019, Comu negotiated with a Dallas attorney to structure deal involving the issuance and sale of a new class of EarthWater securities. After that deal fell through, Comu began negotiations with Nick Mysore, a Dallas-based marketing and branding strategist. The deal discussed between Comu and Mysore contemplated the formation of a new company by Mysore which would acquire EarthWater through a mult-tiered stock transaction. The deal, in many ways heavily gratuitous to Comu in his personal capacity, involved various issuances of securities and related fundraising. Mysore withdrew from the deal when Comu included a provision in the draft agreement that asked Mysore to conceal the stock deal from the Department of Justice.

2

After learning of this conduct, the government moved to revoke Comu's bond and detain him on November 1, 2019. Following a hearing on November 8, 2019, Judge Rutherford revoked the pretrial release on the grounds that there was clear and convincing evidence that Comu had "promoted and advised" on the sale of securities in violation of the court order.

On November 22, 2019, Comu moved for Judge Rutherford to reconsider her detention order. In the motion he argued that his actions did not constitute "advising or promoting" the sale of securities because there was no sale that occurred. Comu also argued that he had a exigent medical condition concerning his eye that made access to regular medical treatment necessary. In support of this argument, Comu provided an affidavit from his ophthalmologist which said that Comu had surgery a month before being arrested and that he should continue to take his prescribed eye drops along with attending follow up appointments. Comu's doctor acknowledged that an ophthalmologist other than himself could provide the necessary follow-up care. Judge Rutherford rejected the argument that his actions did not constitute "advising or promoting" the sale of securities but did express concern about his eye care. Judge Rutherford ordered that accommodations be made to ensure that he either has access to a Parkland hospital ophthalmologist or reasonably access to his current doctor. With the accommodations, Judge Rutherford denied the motion for reconsideration. Comu appealed the order to the District Court on January 3, 2020.

## II.      Motion for Revocation of Order of Detention

In the Motion, pursuant to 18 U.S.C. §3145(c), Comu asked the court to revoke or set aside the magistrate judge's detention order and release him. In support of his Motion, Defendant contends that:

1. Comu's conduct did not rise to the level of "advising or promoting" on the sale of securities because the letter of intent did not constitute a sale.

2. Comu's medical condition creates an exigent circumstance that warrants release so that he can have regular access to medical care.

In response the government contends that Defendant's Motion should be denied because Comu poses a danger to the community, as demonstrated by a 30-year history of defrauding investors and creditors. The government argues that Comu is unlikely to abide by any condition or combination of conditions because he had a demonstrable track record of violating court orders, including filing false claims, repeatedly lying under oath and making false statements in court filings. The government contends that it presented the following evidence at the hearing:

1. After agreeing to refrain from "advising or promoting" on the sale of securities, Comu negotiated with a Dallas attorney to issue and sale a new class of EarthWater securities.

2. After agreeing to refrain from "advising or promoting" on the sale of securities, Comu began discussions with Nick Mysore in May 2019 about the purchase of Earthwater through a string of securities-based transactions.

4

3. Comu knew the conduct was in violation, as evidenced by the proposed term that Mysore not disclose the transaction to the Department of Justice.

4. Comu requested $500,000 from an elderly individual, who was an alleged victim, in the form of a trust so that he could conceal his association with the funds.

The government further asserts that the medical circumstances do not warrant release because Comu has access to a parkland ophthalmologist. Between the filing of the motion (that focused on the lack of care available) and the response, Comu began receiving care at Parkland hospital. Comu did not receive care from his pre-detention physician because that physician would not return any of the calls from the government.

a. <u>Legal Standard</u>

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act [the "Act"], a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or

the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations omitted). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person or the community," a court must consider: "(1) the nature and circumstances of the offense charged ...; (2) the weight of the evidence against the person.; (3) the history and characteristics of the person ...; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "With respect to the quantum of character of proof, ... the Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence." *Fortna*, 769 F.2d at 250 (quoting § 3142(f)) (internal quotation marks omitted).

b.  Analysis

After conducting a *de novo* review of the transcript, briefs, underlying orders, and relevant portions of the record, the court determines that 3142(g) weights in favor of detention. Because Comu can continue to perpetrate the underlying offense of securities fraud if he is released, the first factor weighs in favor of detention. Because the weight of the evidence shows Comu not only participated in, but lead, the fraud, the second factor weighs in favor of detention. Because Comu has a history of violating court orders and disrespecting the judicial process, the Court finds that Comu is not

likely to abide by any conditions that would reduce his threat to the safety of the community, thus supporting the third factor. Because Comu targets elderly individuals and demonstrated an intent to continue to do so, the fourth factor weighs in favor of detention.

Because Comu can continue to perpetrate the underlying offense of securities fraud if he is released, the first factor weighs in favor of detention. The first 3142(g) factor is "the nature and circumstances of the offense charged." 18 U.S.C. § 3142(g). Comu is charged with conspiracy along with wire and mail fraud. Comu demonstrated a pattern of disseminating false and misleading information to defraud investors into purchasing Earthwater stock. Even after being indicited, Comu continued to disseminate the flase information in an attempt to sell the company to unsuspecting investors. The government correctly points out that a release to house arrest would give Comu access to email and telephone service, the only tools needed to continue the scheme. While this alone would not mandate detention, the fact that Comu perpetrated widespread fraud against underinformed parties favors a finding of detention under the first factor.

Because the weight of the evidence shows Comu not only participated in, but lead, the fraud, the second factor weighs in favor of detention. The second factor requires the court to consider "the weight of the evidence against the person." Id. The government has provided substantial evidence that Comu violated the pretrial orders and did so knowingly. One of the two conditions of the release was that Comu not

7

"advise or promote" on the sale of securities. What Comu precede to do is attempt to structure two deals involving the issuance and sale of securities in order to defraud investors of their cash. Comu argues that a letter of intent is not a security or investment contract and therefore he could not have advised or promoted the sale of securities because the sale was inchoate. Comu's argument is misguided as he clearly used the letter of intent in furtherance of a contemplated issuance and sale of securities. The government provided evidence that he advised each of the counterparties on the "best" way to proceed and promoted the value of the securities-transactions. The weight of the evidence is that Comu both advised and promoted transactions that heavily integrated securities.

Because Comu has a history of violating court orders and disrespecting the judicial process, the Court finds that Comu is not likely to abide by any conditions that would reduce his threat to the safety of the community, thus supporting the third factor. The third factor requires the court to consider "the history and characteristics of the person." *Id*. The government provided evidence that Comu has a history of flagrant disregard for the judicial process. Comu was permanently barred from selling unregistered securities in 1989, due to a scheme unrelated to Earthwater, and continued to do so with the Earthwater transactions. Judge Jernigan, in an opinion on Comu's bankruptcy estate, noted that Comu obtained a discharge "through widespread fraud, including the deliberate concealment of assets and significant and numerous false oaths." *In re Comu*, 2014 WL 3339593, at *8.  Finally, Comu chose to flagrantly

disregard Judge Rutherford's order to refrain from advising or promoting the sale of securities. Three completely different actions, three different judges, and three examples of Comu's complete disregard for the judicial process. There is no reason to believe that, if the Court released Comu on conditions, he would abide by any of them. The third factor heavily favors detention.

Because Comu targets elderly individuals and demonstrated an intent to continue to do so, the fourth factor weighs in favor of detention. The final factor requires the court to weigh and "the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." Comu, while in federal custody, contacted an elderly victim and attempted to defraud her of $500,000. While released, Comu attempted to defraud Mysore of a million dollars. If released, even to house arrest, the Court has no reason to believe Comu's representations that he will not once again attempt to perpetrate the fraud.

As for the medical issue raised in the Motion, the Court is unpersuaded that it warrants release. Judge Rutherford, in the motion for reconsideration hearing, expressed concern over his eye condition. In his motion to this Court, Comu represented that he had not received any treatment in the two weeks he was in custody. Since his motion, Comu has received care from a Parkland ophthalmologist. His pre-detention ophthalmologist stated that Comu needed to take his eye drops regularly and have access to follow-up appointments. Importantly, the doctor noted that another ophthalmologist could render this care. The government attempted to accommodate

9

access to his pre-dentition ophthalmologist, but the doctor did not return any of the government's attempts to contact. Because his pre-detention physician did not accommodate the government, the government provided him treatment through Parkland. Weighing all of these facts together, the Court is not persuaded that an exigent medical circumstance exists that would warrant his release to house arrest.

## III.    Conclusion

Because all four of the 3142(g) factors weigh in favor of detention, the Court **DENIES** Defendant's Motion for Review and Revocation of Magistrate Judge's Order of Detention and Appeal of Magistrate Judge's Order Denying Defendant's Motion for Reconsideration and **AFFIRMS** Judge Rutherford's Order Denying Defendant's Motion for Reconsideration.

**SO ORDERED.**

Signed February 4th, 2020.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE