IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                                    No. 3:19-CR-112-K

CENGIZ JAN COMU

DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S
MOTION TO CONTINUE SENTENCING

For the reasons that follow, the Defendant, Cengiz Jan Comu ("Comu"), respectfully
submits this response in opposition to the government's motion to continue his sentencing hearing
until 45 days *after* his co-defendants' trial, which is currently scheduled for January 19, 2021:

## I.
## INTRODUCTION

The government currently seeks to delay Comu's sentencing hearing, which is currently
set for July 8, 2020, until at least forty-five (45) days after the trial of Comu's codefendants, which
is currently set for January 19, 2021. Thus, the government seeks to delay Comu's sentencing by
at least eight (8) months. As discussed herein, the purported issues that the government presents
in an effort to justify its requested continuance can be easily remedied without the need for a
continuance. The substantial harm that would result to Comu if the requested continuance were
granted, however, cannot be remedied. As such, and for the reasons that follow, Comu respectfully
submits that the government's motion should be denied.

## II.
## ARGUMENT AND AUTHORITIES

In a recent decision addressing delay in sentencing, the Supreme Court found that although
the constitutional speedy trial right does not apply between conviction and sentencing, "[t]hat does
not mean … that defendants lack any protection against undue delay at this stage." *Betterman v.*

*Montana*, — U.S. —, 136 S.Ct. 1609, 1617 (2016). For instance, the "federal rule on point directs the court to 'impose sentence without unnecessary delay.'" *Id.* at 1617 (quoting Fed. Rule Crim. Proc. 32(b)(1)). Additionally, the Court explained that "a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 1612 ("As at the prearrest stage, due process serves as a backstop against exorbitant delay. After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair.").

While the Court did not consider the appropriate test for such a Due Process challenge (as that issue was not properly before it), Justice Sotomayor wrote a concurring opinion emphasizing that this remains an open issue and suggesting that the test from *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, (1972) would likely be appropriate. *Id.* at 1619 (Sotomayor, J. concurring). Justice Sotomayor made the important observation that this test has previously been applied by the Court to delays other than those under the Speedy Trial Clause, namely in "evaluating whether a delay in instituting judicial proceedings following a civil forfeiture violated the Due Process Clause." *Id.* Moreover, Justice Sotomayor explained that "the *Barker* factors capture many of the concerns posed in the sentencing delay context and that because the *Barker* test is flexible, it will allow courts to take account of any differences between trial and sentencing delays." *Id.* Notably, the "majority of the Circuits in fact use the *Barker* test for that purpose." *Id.*

Indeed, when "evaluating speedy trial claims, including those involving sentencing delays, the Fifth Circuit is among those which have applied the four-factor test established in *Barker v. Wingo*." *Moreno-Dominguez v. United States*, No. 7:08-CR-1697-4, 2017 WL 3190728, at *6 (S.D. Tex. May 25, 2017), report and recommendation adopted, CR M-08-1697-4, 2017 WL

3168362 (S.D. Tex. July 25, 2017). *See also United States v. Washington*, 626 Fed. Appx. 485, 487 (5th Cir. 2015) (applying *Barker* factors to a claim of sentencing delay); *United States v. Peters,* 349 F.3d 842, 850 (5th Cir. 2003) (same); *United States v. Abou–Kassem,* 78 F.3d 161, 167 (5th Cir. 1996) (same); *Akpan v. United States*, 3:04-CR-36-L, 2013 WL 4398950, at *4 (N.D. Tex. Aug. 14, 2013) ("Whether sentencing delays violate a defendant's Sixth Amendment rights is reviewed pursuant to the factors set forth in *Barker v. Wingo*.").

Given that the Supreme Court has not addressed the precise issue of what test applies when evaluating sentencing delay under the Due Process Clause, the Fifth Circuit's case law dictating the application of the *Barker* test to a claim of sentencing delay thus controls. Under the *Barker* test, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. None of these factors is either necessary or sufficient; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. 2182.

### A.  Significant Length of Delay is Unwarranted

With respect to the first factor, it is impossible under the present circumstances to know with certainty what the length of delay would ultimately be, given the distinct possibility that the trial could be continued, however it would be no less than eight (8) months at a minimum. Where the median time between conviction and sentencing for a federal defendant has been observed to be ninety-nine (99) days, a delay of at least eight (8) additional months beyond the currently scheduled date would undoubtedly constitute a substantial delay. *See Betterman*, 136 S. Ct. at 1617, n.8. Granting the requested delay in this case would result in a total time between conviction and sentencing of at least 346 days – a length of time that is more than *triple* both the median time

(99 days) and the amount of time in this case, as currently scheduled (106 days). As such, this factor weighs in favor of denying the government's motion.

### B. The Government Fails to Provide a Compelling Reason for the Delay

In an attempt to support its significant request to delay Comu's sentencing for nearly eight (8) months (or even longer if the trial were to be continued), the government offers two stated justifications. First, the government asserts that a continuance "would allow the government to make the most efficient sentencing presentation to the Court and allow the Court to sentence all of the defendants in these cases with the benefit of a complete record." Gov. Mot. at 2. Specifically, the government argues that if Comu's sentencing were to occur prior to the trial, then "the government would call witnesses to testify at Comu's sentencing hearing who it would also expect to call again at trial." *Id.* at 3. On the other hand, the government argues, holding Comu's "sentencing after the conclusion of trial would allow these elderly victims to make only on trip to testify, rather than two." *Id.* The government offers no explanation as to why the necessity of these individuals' testimony at Comu's sentencing changes depending on when that hearing is held. Whatever the reason may be, however, this issue can be easily resolved without the need for a continuance.

As this Court is well aware, the rules of evidence do not apply at sentencing. As a result, the government is free to offer the testimony of these witnesses via video conferencing, for example. Likewise, the government is free to offer into evidence at sentencing any number of documents or records which could further capture the information which the elderly witnesses would testify to, such as the presentence report ("PSR") prepared by the United States Probation Officer, reports from interviews, affidavits, or victim impact letters, among others. Through the use of video conferencing, the PSR, and other available alternatives to live testimony, there would

be no need for the witnesses to travel to the sentencing, regardless of when it may be held. Therefore, the government's stated concern about the burden that might be placed on these witnesses by having to testify more than once is entirely self-created. If the government is truly concerned about the witnesses having to travel more than once, then they can easily resolve that issue by choosing to offer their testimony through the use of video conferencing, or any number of other alternative means.

As their second stated justification for the significant delay requested, the government cites the "material risk of exposure to COVID-19" which the witnesses might face if they were required to board a commercial airplane to travel to Texas. *Id.* As an initial matter, Comu has no desire to put anyone else at risk of exposure to COVID-19. In fact, Comu understands better than anyone the severity of the COVID-19 pandemic, having contracted it himself while in custody awaiting the very sentencing hearing which the government seeks to further delay. As a result, Comu has been placed in isolation within the Dallas County Jail infirmary for several weeks now, while attempting to recover from COVID-19. Of course, the government completely dismissed Comu's concerns about the COVID-19 pandemic when he raised them in his motion for temporary release to home confinement. Now that COVID-19 may pose a risk to something in the government's interest, however, that position has changed. Here, the government argues that merely traveling by commercial airplane (as opposed to living in a crowded detention facility with little, if any, access to basic hygiene practices and no ability to practice "social distancing") would pose a "material risk of exposure to COVID-19." Gov. Mot. at 3.

Tellingly, the government is nonetheless fully willing to subject these witnesses to this "material" risk not just once, but twice, in the event that Comu's sentencing is not rescheduled according to the government's requested time table. To the extent that this risk is not significant

enough to stop the government from calling the witnesses twice in the event that Comu's sentencing occurs prior to the trial, it is certainly not significant enough to warrant the nearly eight (8) month delay (if not longer) sought by the government. Moreover, this purported issue (much like the first) can be easily resolved via the use of video conferencing. By allowing the witnesses to testify via videoconferencing, or by presenting this evidence through the PSR or any of the numerous other legally admissible means, the government would spare the witnesses from traveling for the purpose of testifying at Comu's sentencing, regardless of when it is held. Thus, the second factor weighs in favor of denying the government's requested continuance.

### C.  Comu Has Promptly and Fully Asserted His Rights

On March 10, 2020, Comu appeared at his rearraignment hearing and entered a plea of guilty to the charges against him. On the same day, a Sentencing Scheduling Order was entered by District Judge Kinkeade, setting Comu's sentencing hearing for July 8, 2020. Comu has not filed any motion to continue this sentencing date. When presented with the government's motion to continue, the Defendant unambiguously conveyed to the government that Comu is opposed to the relief requested therein. Consistent with that position, Comu has timely filed the instant response in opposition, further asserting his rights under the Due Process Clause and Federal Rule of Criminal Procedure 29 to a timely sentencing, free from unreasonable and unnecessary delay. On these facts, Comu has clearly asserted his rights at every relevant opportunity. As such, the third factor weighs in favor of denying the requested continuance.

### D.  Delay Would Cause Substantial Prejudice to Comu

Granting the lengthy continuance requested by the government would cause substantial harm and prejudice to Comu. As an initial matter, the Government completely ignores the serious health risk to Comu of continuing to be held pending sentencing for at least eight (8) more months

in the petri dish otherwise known as the Dallas County Jail – a facility that is already facing a severe (and ever-expanding) COVID-19 outbreak. Despite the government's arguments to the contrary in its response to Comu's motion for temporary release to home confinement, it is now obvious that whatever precautions may have been taken by the Dallas County Jail were woefully inadequate to protect its prisoners (including Comu) from COVID-19. Subjecting Comu to this heavily infected environment for a minimum of eight (8) more months, particularly where he has already contracted this potentially life-threatening disease and is in a much more fragile state of health as a result, would undoubtedly prejudice him.

Even setting aside all of the sickness and disease that is prevalent (and increasing daily) in this facility, however, the mere fact of being forced to spend an extended period of time in the Dallas County Jail (far from a desirable institution) would be detrimental to Comu. In this facility, there is little in the way of rehabilitative programs, the "law library" is one in name only, and even a breath of fresh air is impossible, as inmates are not allowed outside for recreational activity. Visitation with inmates (when it is not suspended, as it is now) is conducted either through glass or through a video monitor, depriving inmates of the ability to embrace a loved one. On top of these already dire conditions, the vast majority of inmates of all custody levels are thrust together in "pods" or "tanks" and forced to try and survive. By contrast, facilities operated by the Federal Bureau of Prisons ("BOP") – where Comu will be transferred once he is sentenced – offer significantly improved quality of life due to several key differences.

As an initial matter, the staff of the BOP facilities are much more highly trained than the jailers at the Dallas County Jail. As a result, inmates are arguably treated more humanely in BOP facilities and are thus subject to less psychological suffering. With regard to safety, BOP inmates are classified and housed based upon their security risk to both staff and other inmates, meaning

that a non-violent white-collar offender such as Comu would be surrounded by other non-violent offenders, as opposed to the broad range of offenders with whom he is currently housed. Particularly for an older inmate who is in poor health and has severely impaired vision, being subjected to the increased safety risk (not to mention the constant stress and fear that result therefrom) posed by the conditions of the Dallas County Jail for an additional eight (8) months or more would cause substantial prejudice to Comu.

Moreover, BOP facilities offer many beneficial opportunities not available at the Dallas County Jail. For instance, Comu would be afforded the ability to have contact visits with his friends and family – a small act of humanity that is not permitted at the Dallas County Jail. A BOP facility would also offer the much-needed ability to go outside long enough to at least take a breath of fresh air and feel the warmth of the sun shining down – the value of which cannot be overstated. Having at least occasional access to the outdoors (however limited) is vital to an individual's wellbeing, as it not only raises one's spirits, but imparts numerous health benefits as well. Granting the requested continuance would prejudice Comu by unnecessarily depriving him of the improved conditions that he will be subject to once he is sentenced.

Finally, a BOP facility would offer Comu the chance to take on a job within his unit, but perhaps even more importantly, the chance to begin rehabilitative classes. Participation in these classes is vital to any federal inmate – not only by providing a sense of purpose, but also by working to reduce an inmate's sentence under the First Step Act.[1] As a result, forcing Comu to remain in the Dallas County Jail throughout the extended and unnecessary delay requested by the government would potentially be lengthening his sentence. Comu has demonstrated model

---

[1] *See* 18 U.S.C. § 3632(d)(4)(B)(ii) ("A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed ... during official detention prior to the date that the prisoner's sentence commences under section 3585(a).")

**Response in Opposition to Government's Motion to Continue Sentencing**
**Page 8 of 10**

behavior while in custody to date and would gladly participate in rehabilitative programs if any were made available to him. As such, forcing him to spend an additional eight (8) months in the Dallas County Jail, where he cannot earn credit under the First Step Act regardless of how exemplary his behavior may be, would cause severe harm to Comu by denying him the relief afforded by the First Step Act. Considering the numerous ways in which Comu would be prejudiced by the requested delay, it is evident that the fourth factor weighs in favor of denying the government's request.

### III.
### Conclusion

The government's motion notwithstanding, Comu certainly understands that the COVID-19 pandemic has created havoc within the court system and that his July 8, 2020 sentencing date may need to be adjusted somewhat as a result. To delay his sentencing until forty-five (45) days after the co-defendants' trial (which is at least eight (8) months away), however, is completely unreasonable given the significant prejudice to Comu that would result from the requested delay. Moreover, the requested delay is entirely unnecessary, as demonstrated by the government's unavailing attempts at justification. Due to the rules governing sentencing hearings, the government has numerous substitutes for live testimony that are more than adequate to protect their witnesses, if that really is their true concern. However, there are no adequate substitutes for Comu. The longer he spends in the Dallas County Jail, the greater the harm that will befall nearly every aspect of his life – his health (both physical and mental), his marriage, and even his liberty, given that he is prohibited from earning credit under the First Step Act. In short, granting the requested continuance in this case would violate both the requirements of Rule 29, as well as Comu's rights under the Due Process Clause, by allowing a significant and entirely unnecessary delay in Comu's sentencing, to his significant prejudice.

For each of these reasons, Comu respectfully requests that the government's Motion to Continue Sentencing be denied.

Respectfully submitted,

*/s/ Alexandra Hunt*

**ALEXANDRA HUNT**
Texas Bar No. 24095711
2515 McKinney Avenue
Chateau Plaza, Suite 940
Dallas, Texas 75201
Telephone: 214-720-4040
Email: ahunt@sorrelshagood.com

**DANIEL K. HAGOOD, P.C.**
Texas Bar No. 08698300
2515 McKinney Avenue
Chateau Plaza, Suite 940
Dallas, Texas 75201
Telephone: 214-720-4040
Email: dhagood@sorrelshagood.com

**BRIAN D. POE**
Texas Bar No. 24056908
909 Throckmorton Street
Fort Worth, TX 76102
Telephone: 817-870-2022
Email: bpoe@bpoelaw.com

**COUNSEL FOR DEFENDANT COMU**

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of April, 2020, a true and correct copy of the foregoing document was filed with the Clerk of the Court for the United States District Court, Northern District of Texas using the electronic case filing system, which provides for service upon all counsel of record.

*/s/ Daniel K. Hagood*
DANIEL K. HAGOOD, P.C.