IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.                                              No. 3:19-CR-112-K

CENGIZ JAN COMU

DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S
MOTION TO CONSOLIDATE SENTENCINGS

For the reasons that follow, the Defendant, Cengiz Jan Comu ("Comu"), respectfully submits this, his Response in Opposition to the Government's Motion to Consolidate Sentencings, wherein the Government once again seeks to delay the Defendant's sentencing hearing for a period of at least two months, but potentially up to five months (or longer, in the increasingly likely event that the trial in this case is continued beyond the currently scheduled January 19, 2021 date), and in support thereof would show the Court as follows:

## I.
## INTRODUCTION

The government again seeks to delay Comu's sentencing hearing, which is currently set for September 16, 2020, until either November 18, 2020, or to a date after the trial of Comu's codefendants, which is currently set for January 19, 2021. Thus, the government seeks to delay Comu's sentencing by at least two (2) months, but potentially four (4) months, or significantly longer, in the very possible (if not likely) event that the trial is continued due to the significant disruptions caused by COVID-19. As discussed herein, none of the purported issues that the government presents in an effort to justify their requested consolidation and delay provide a sufficient (or even compelling) basis upon which to deny Comu a sentencing conducted "without unnecessary delay," as called for by the applicable rules of procedure. *See* Fed. R. Crim. P.

32(b)(1). Moreover, just as with its initial request to delay Comu's sentencing (ECF No. 267) the government plainly ignores the substantial harm that would befall Comu if the requested consolidation and resulting continuance were granted. As such, and for the reasons that follow, Comu respectfully submits that the government's motion should be denied.

## II.
## ARGUMENT AND AUTHORITIES

In a recent decision addressing delay in sentencing, the Supreme Court found that although the constitutional speedy trial right does not apply between conviction and sentencing, "[t]hat does not mean … that defendants lack any protection against undue delay at this stage." *Betterman v. Montana*, — U.S. —, 136 S.Ct. 1609, 1617 (2016). For instance, the "federal rule on point directs the court to 'impose sentence without unnecessary delay.'" *Id.* at 1617 (quoting Fed. Rule Crim. Proc. 32(b)(1)). Additionally, the Court explained that "a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 1612 ("As at the prearrest stage, due process serves as a backstop against exorbitant delay. After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair.").

While the Court did not consider the appropriate test for such a Due Process challenge (as that issue was not properly before it), Justice Sotomayor wrote a concurring opinion emphasizing that this remains an open issue and suggesting that the test from *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, (1972) would likely be appropriate. *Id.* at 1619 (Sotomayor, J. concurring). Justice Sotomayor made the important observation that this test has previously been applied by the Court to delays other than those under the Speedy Trial Clause, namely in "evaluating whether a delay in instituting judicial proceedings following a civil forfeiture violated the Due Process Clause." *Id.*

Moreover, Justice Sotomayor explained that "the *Barker* factors capture many of the concerns posed in the sentencing delay context and that because the *Barker* test is flexible, it will allow courts to take account of any differences between trial and sentencing delays." *Id.* Notably, the "majority of the Circuits in fact use the *Barker* test for that purpose." *Id.*

Indeed, when "evaluating speedy trial claims, including those involving sentencing delays, the Fifth Circuit is among those which have applied the four-factor test established in *Barker v. Wingo*." *Moreno-Dominguez v. United States*, No. 7:08-CR-1697-4, 2017 WL 3190728, at *6 (S.D. Tex. May 25, 2017), report and recommendation adopted, CR M-08-1697-4, 2017 WL 3168362 (S.D. Tex. July 25, 2017). *See also United States v. Washington*, 626 Fed. Appx. 485, 487 (5th Cir. 2015) (applying *Barker* factors to a claim of sentencing delay); *United States v. Peters,* 349 F.3d 842, 850 (5th Cir. 2003) (same); *United States v. Abou–Kassem,* 78 F.3d 161, 167 (5th Cir. 1996) (same); *Akpan v. United States*, 3:04-CR-36-L, 2013 WL 4398950, at *4 (N.D. Tex. Aug. 14, 2013) ("Whether sentencing delays violate a defendant's Sixth Amendment rights is reviewed pursuant to the factors set forth in *Barker v. Wingo*.").

Given that the Supreme Court has not addressed the precise issue of what test applies when evaluating sentencing delay under the Due Process Clause, the Fifth Circuit's case law dictating the application of the *Barker* test to a claim of sentencing delay thus controls. Under the *Barker* test, courts consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. None of these factors is either necessary or sufficient; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. 2182. An application of these factors to the case at hand demonstrate that the government's motion should be denied.

**A.  Significant Length of Delay is Unwarranted**

With respect to the first factor, it is impossible under the present circumstances to know with certainty what the length of delay would ultimately be, but even at its shortest, it would nonetheless be unwarranted. Even if reset for the November 18, 2020 date, there is by no means any guarantee that the government will not seek to again continue the hearing, likely until after the conclusion of the trial. Particularly considering the likelihood that the government will want to have the benefit of considering the value of any trial testimony that may be provided by any cooperating defendant(s) when making their sentencing presentation(s), it is all but certain that the government will simply seek another continuance along those grounds, even if their current request for relief is granted. Thus, the government's arguments with respect to the length of the delay must be assessed against that broader picture.

In any event, there would be a minimum of at least two (2) or four (4) months notwithstanding the distinct possibility that the trial could be continued. This, of course, would be in addition to the two (2) month delay already endured by Comu. Where the median time between conviction and sentencing for a federal defendant has been observed to be ninety-nine (99) days, a delay of at least two (2) (much less four (4) or more), additional months beyond the currently scheduled date would undoubtedly constitute a substantial delay. *See Betterman*, 136 S. Ct. at 1617, n.8. Granting the requested delay in this case would result in a total time between conviction and sentencing of at least 253 days (if continued until November 18, 2020), if not 322 days (if conducted even one week following the January 19, 2021 trial setting) – a total length of time that is more than *double*, if not *triple* both the median time (99 days) and the amount of time in this case, as originally scheduled (106 days). As such, this factor weighs heavily in favor of denying the government's motion.

**B.  The Government Fails to Provide a Compelling Reason for the Delay**

In an attempt to support its significant request to consolidate the sentencings and thereby delay Comu's sentencing for at least two (2) additional months, *or alternatively twice that amount of time if not much longer*, the government offers but two purported justifications.

1. Consolidation Would Not Provide Convenience for the Court

First, the government asserts that consolidating the sentencings would "allow this Court to save time and resources by requiring the parties to present the facts and arguments only once." Gov. Mot. at. 3 (ECF No. 288). This contention is flawed in several respects. As to the government's argument that consolidating the sentencings would make the most efficient presentation due to the "overlap of the underlying facts necessary to determine each defendant's sentence," the government is completely ignoring the fact that many of the most significant matters at issue in Comu's sentencing will not even be considered in the sentencings of his codefendants, given that they have already stipulated to those matters as a requirement of their plea agreements. For instance, perhaps the single most highly disputed fact regarding Comu's sentence (the alleged intentional targeting of elderly or otherwise particularly vulnerable victims) has already been stipulated to by several of the other defendants at issue here. Thus, the consolidation of the sentencings will, at best, serve to significantly lengthen the sentencings of those defendants.

Moreover, to the extent that other defendants have been cooperating with the government, there will undoubtedly be a need to address said cooperation at their sentencing hearings, which raises several issues. First, to the extent that such information should remain under seal, the idea of a consolidated sentencing hearing will only further complicate matters. Second, to the extent that any of these defendants may be expected to testify at the trial, it is highly likely that the government will seek to continue their sentencings until after the trial, in order to be able to take

the value of said testimony into consideration. As such, there is no apparent efficiency to be gained by consolidating the sentencings, only a significant delay—namely, the very delay that the government has been requesting since April of this year. *See* ECF No. 267.

Perhaps even more significant, however, is the substantially increased health risk that consolidation would impose upon not only the defendants, but also the Court, its staff, the defense counsel, the government counsel, and any witnesses or other attendees of the hearing, *including any victims*. Even assuming that each defendant would have no more than one individual present on behalf of their defense team, that the government would only have one attorney and one agent present, and that no live witnesses were in attendance, the number of individuals who would be present in the courtroom during a consolidated sentencing hearing would amount to a bare minimum of eighteen (18) individuals.[1] Of course, that is an excessively low estimate, considering that the defendants will likely have more than one attorney/defense team member present, that there would almost certainly be at least one marshal per defendant in custody, that the government will likely have more than one attorney and one agent present, that the defendants may well have family and/or friends present, and that there will likely be witnesses present. By the undersigned's estimate, a total of at least twenty-five (25) people would represent a realistic estimate of the bare minimum number of individuals present at a consolidated hearing. Considering those numbers, it would be plainly impossible to conduct the consolidated heaing without violating social distancing protocols. In other words, holding a consolidated hearing would only serve to increase the already substantial dangers posed by COVID-19—dangers which far outweigh any purported convenience.

---

[1] Namely: the Judge, the five defendants, the five defense attorneys, one government attorney, one government agent, the court reporter, the court coordinator, the bailiff, and one marshal.

**Response in Opposition to Government's Motion to Consolidate Sentencings**
**Page 6 of 12**

2.  <u>Consolidation Would Only Limit the Victims' Opportunity to Be Heard</u>

Second, the government asserts that consolidating the sentencings would provide the best opportunity for the "victims of the defendant's (sic) scheme, many of whom are elderly, to exercise their rights to appear in person, if they choose, and be heard," citing the "significant obstacles" posed by COVID-19 as a concern. Gov. Mot. at. 3-4 (ECF No. 288). Of course, as an initial matter, it would unquestionably be safest for the victims, particularly those who may be older in age, to testify via videoconference. And, given the fact that the government has not identified even one witness who wishes to appear in person, it may well be the overwhelming preference of the victims to appear in that manner. Even a cursory assessment of the situation, however, reveals that a consolidation would, in fact, only serve to limit the victims' opportunity to be heard, while simultaneously subjecting them to substantially increased health risks.

With respect to the Government's argument that consolidating the sentencings would somehow minimize the risks associated with traveling to attend the hearing(s) in person, it is highly doubtful that traveling in November versus in September would offer any notable decrease in risk. If anything, traveling so close to the Thanksgiving holiday would very possibly lead to increased travel traffic generally, posing a *more* dangerous situation for the victims, as opposed to *less* so. Similarly, by having one consolidated hearing, the victims would plainly be limited in their opportunity to appear and be heard. Not only does this deprive the victims of the flexibility that is offered by having multiple sentencing hearings at which they may appear, to the extent that the November 18, 2020 date is incompatible with their schedule, for instance, but it further allows them the change to be heard on more than one occasion, as opposed to just the single hearing under the government's proposed consolidation.

Likewise, with respect to the COVID-19 concerns that the government cites as a basis for its position, a consolidated hearing would substantially increase the risk to the victims of attending the sentencing hearing in person. As stated above, there is simply no possible way to conduct a consolidated sentencing hearing with proper social distancing measures in place. As such, granting the government's request for a consolidated hearing would, in fact, serve as a deterrent to the victims' ability to appear in person, given that it would significantly increase the attendant risk to their health. To the extent that any victims do genuinely wish to appear in person, a consolidated hearing would put them in the unfortunate position of choosing between exercising their right to be heard versus protecting their own health and wellbeing. Thus, it is clear that separate sentencings would afford the victims a much better (*and safer*) opportunity to be heard. As such, the second factor clearly weighs in favor of denying the government's requested consolidation.

### C. Comu Has Promptly and Fully Asserted His Rights

On March 10, 2020, Comu appeared at his rearraignment hearing and entered a plea of guilty to the charges against him. On the same day, a Sentencing Scheduling Order was entered by District Judge Kinkeade, setting Comu's sentencing hearing for July 8, 2020. Comu has not filed any motion to continue this sentencing date. When presented with the government's Motion to Continue (ECF No. 267), the Defendant immediately filed a response in opposition, further asserting his rights under the Due Process Clause and Federal Rule of Criminal Procedure 29 to a timely sentencing. Likewise, upon receiving the PSR, which implicated numerous complicated legal issues to be addressed, the undersigned nonetheless completed said objections in a timely fashion and submitted them by the Court-ordered deadline without any request for additional time or delay. On these facts, Comu has clearly asserted his rights at every relevant opportunity. As such, the third factor weighs in favor of denying the requested consolidation.

### D.  Delay Would Cause Substantial Prejudice to Comu

Notably, despite its claims to the contrary, the government is, in fact, perfectly aware of at least one way in which Comu would unequivocally be prejudiced by the granting of the requested consolidation. Namely, as discussed in Comu's Response in Opposition to the Government's Motion for Continuance (ECF No. 268), he will not be able to earn any time credits under the First Step Act for any of the extensive time that he has served (and will continue to serve) prior to his sentencing. Thus, regardless of the government's view as to the weight of that prejudice, it is simply inaccurate to assert that the requested consolidation (and resulting delay) "will not prejudice" Comu. *See* Gov. Mot. at 4 (ECF No. 288). As a result, forcing Comu to remain in the Dallas County Jail throughout the extended and unnecessary delay which would result from the requested consolidation would effectively be lengthening his sentence. The magnitude of this harm is further evidenced by the fact that Comu has demonstrated model behavior while in custody to date, and would gladly participate in rehabilitative programs if any were made available to him. As such, forcing him to spend an additional two (2) months, much less four (4) months – *or potentially much longer than that, if the trial were to be continued* – in the Dallas County Jail, where he cannot earn credit under the First Step Act, regardless of how exemplary his behavior may be, would cause severe harm to Comu by denying him the relief afforded by that Act.

Even aside from this substantial and unmitigable harm, there are numerous other ways in which Comu would be prejudiced by the consolidation. Perhaps the most obvious is, of course, the continued severe health risk that Comu faces within the Dallas County Jail. Although the government was quick to dismiss this severe health risk in response to Comu's request for temporary release, it is undeniable that Comu's fears were, in fact, well founded, as evidenced by the fact that he did, indeed, contract COVID-19 within a matter of days following his request for

relief. Despite the government's fervent arguments to the contrary, it is now obvious that whatever precautions may have been taken by the Dallas County Jail were woefully inadequate to protect its prisoners (including Comu) from COVID-19. Continuing to subject Comu to this heavily infected environment for months on end, particularly where he has already contracted this often-life-threatening disease and is in a much more fragile state of health as a result, would undoubtedly prejudice him.

While the inability to earn time credits under the First Step Act and the severe health risk constitute real and substantial prejudice without more, there are nonetheless myriad other ways in which Comu would be prejudiced by the requested consolidation, each of which were addressed in detail in the Defendant's Response in Opposition to the Government's Motion for Continuance (ECF No. 268). As such, in order to avoid unwarranted repetition, Comu hereby incorporates those factors by reference, as opposed to restating them here. In short, as discussed above, granting the consolidation requested by the government would cause substantial harm and prejudice to Comu. As a result, it is evident that the fourth factor weighs in favor of denying the government's request.

## III.
## Conclusion

As set forth above, neither of the purported bases urged by the government come close to justifying the substantial prejudice that Comu would suffer if the requested consolidation (and resulting delay) were to be granted. In fact, neither of the purported benefits of consolidation urged by the government would actually even result therefrom. As to the idea of judicial convenience, the issues to be considered at the various sentencings are, in fact, quite different, as the result of stipulations made by some defendants, among other reasons, meaning that no real increase in efficiency would result from a consolidated hearing. In addition, even if there were any increase in efficiency, it would nonetheless be outweighed by the significantly increased health risk to the

Court and all other parties involved in the sentencing, due to the inability to follow social distancing protocols with such a large group.

The government's second argument fares no better. By consolidating the sentencings, the victims would not be given a better opportunity to be heard, but instead would encounter a much more limited opportunity to do. Not only would this restrict the opportunity to one particular calendar date, but it would further limit the victims to only one opportunity to speak. Finally, and perhaps most pertinently, the substantially increased health risk that would be posed by a consolidated hearing with no ability to follow social distancing precautions, would severely restrict the victims' ability to appear in person, should they wish to.

Under these circumstances, it is clear that a consolidation, resulting in continued delay, is entirely unwarranted and would cause substantial harm and prejudice to Comu. Notably, it would likewise cause significant harm to the Court and all the parties, by subjecting them to a severely increased health risk. While the Court has many options at its disposal with respect to maximizing efficiency and the victims have various means by which they can be heard (*i.e.* in person, via videoconferencing, through written statements, etc.), there is no means by which Comu's loss of liberty resulting from a deprivation of the ability to earn credits under the First Step Act could be remedied. As such, granting the consolidation would violate both the requirements of Rule 29, as well as Comu's rights under the Due Process Clause, by allowing a significant and entirely unnecessary delay in his sentencing, to his substantial prejudice. For each of these reasons, Comu respectfully requests that the government's Motion to Consolidate Sentencings be denied.

Respectfully submitted,

/s/ Alexandra Hunt

**DANIEL K. HAGOOD, P.C.**
Texas Bar No. 08698300
2515 McKinney Avenue
Chateau Plaza, Suite 940
Dallas, Texas 75201
Telephone:  214-720-4040
Email:  dhagood@sorrelshagood.com

**BRIAN D. POE**
Texas Bar No. 24056908
909 Throckmorton Street
Fort Worth, TX 76102
Telephone:  817-870-2022
Email:  bpoe@bpoelaw.com

**ALEXANDRA HUNT**
Texas Bar No. 24095711
2515 McKinney Avenue
Chateau Plaza, Suite 940
Dallas, Texas 75201
Telephone:  214-720-4040
Email:  ahunt@sorrelshagood.com

**COUNSEL FOR DEFENDANT COMU**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2020, a true and correct copy of the foregoing document was filed with the Clerk of the Court for the United States District Court, Northern District of Texas using the electronic case filing system, which provides for service upon all counsel of record.

 /s/ Daniel K. Hagood
DANIEL K. HAGOOD, P.C.